# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

ORTIZ JACKSON                                    CIVIL ACTION

VERSUS                                           NO. 16-15959

DARREL VANNOY, WARDEN                             SECTION: "H"(3)

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2). Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Ortiz Jackson, is a state prisoner incarcerated at the Louisiana State Penitentiary, Angola Louisiana. On November 20, 2008, Jackson and co-defendant Samuel Mack were indicted in the Parish of Orleans for one count of second degree murder and one count of aggravated battery with a dangerous weapon.[1] Jackson was tried before a jury as to count one on November 17, 18 and 19, 2010, and was found guilty of second degree murder by a verdict of 10-2.[2] The state eventually entered a *nolle prosequi* as to the aggravated battery charge.[3] Jackson's motion for

---

[1] St. Rec. Vol. 2 of 5, Bill of Indictment, 11/20/08.
[2] St. Rec. Vol. 1 of 5, Minutes, 11/17/10; Minutes, 11/18/10; Minutes, 11/19/10; Vol. 2 of 5, Jury Verdict, 11/19/10. Co-defendant Mack was tried separately and found guilty. St. Rec. Vol. 1of 5, Minutes, 8/25/11.
[3] St. Rec. Vol. 1 of 5, Minutes, 9/8/11.

new trial and post-verdict judgment of acquittal was denied.[4]  The court sentenced Jackson to life imprisonment at hard labor without the benefit of probation, parole or suspension of sentence.[5]

Jackson filed a direct appeal to the Louisiana Fourth Circuit, alleging the following claims: (1) the non-unanimous verdict violated his right to due process of law; (2) he was denied his right to confront and cross-examine witnesses; and (3) the trial court erred in allowing the prosecution, during its closing argument, to attack and comment on the defense attorneys and defense strategy.[6] The court denied petitioner's appeal on April 24, 2013.[7]  Jackson then filed a writ application to the Louisiana Supreme Court which was denied on December 2, 2013, without explanation.[8] Jackson's application for writ of certiorari was denied by the United States Supreme Court on April 28, 2014.[9]

On April 8, 2015, petitioner filed an application for post-conviction relief with the state district court in which he claimed ineffective assistance of counsel by failing to investigate and interview witnesses and subpoena them to testify at trial and by failing to cross-examine the state's expert relating to phone records.[10]  Petitioner filed a supplemental brief in which he raised an additional claim of ineffective assistance of counsel by failing to file a notice of alibi and investigate alibi witnesses.  The state trial court denied petitioner's application on June 16, 2015, finding the "claims raised are without merit."[11]  The Louisiana Fourth Circuit Court of Appeal denied petitioner's application for supervisory writ finding "no error in the district court

---

[4] St. Rec. Vol. 2 of 5, Motion for New Trial and for Post-Verdict Judgment of Acquittal, 1/28/11; Sentencing Minutes, 8/12/11.
[5] St. Rec. Vol. 1 of 5, Sentencing Minutes, 8/12/11.
[6] St. Rec. Vol. 3 of 5, Appeal Brief, 2012-KA-0090, 2/23/12.
[7] State v. Jackson, 115 So.3d 1155 (La. App. 4th Cir. 2013); St. Rec. Vol. 3 of 5, 4th Cir. Order, 2012-KA-0090, 4/23/13.
[8] State v Jackson, 126 So.3d 497 (La. 2013) (mem.); St. Rec. Vol 5 of 5, La. Supreme Court Order, 2013-KO-1235, 12/2/13; Application for Writ, 13 KO 1235, 5/30/13 (dated 5/21/13); Supplement, 5/30/13.
[9] Jackson v. Louisiana, 134 S. Ct. 1950 (2014).
[10] St. Rec. Vol. 1 of 5, Application for Post-Conviction Relief, 4/8/15.
[11] St. Rec. Vol. 1 of 5, Minute Order, 6/16/15.

summarily denying relator's application for post-conviction relief on June 16, 2015."[12]   The Louisiana Supreme Court denied petitioner's application for review without stated reasons.[13]

Petitioner thereafter filed the instant federal application seeking habeas corpus relief alleging the following claims: (1) denial of his right to confront and cross-examine witnesses; (2) improper closing argument; (3) the non-unanimous verdict violated his right to due process; and (4) ineffective assistance of counsel in that counsel failed to (a) cross-examine the state expert witness; (b) adequately investigate the case and interview or call witnesses; and (c) file a notice of alibi and investigate alibi witnesses.[14]

The state does not challenge the timeliness of petitioner's application.   The state argues that petitioner failed to exhaust his claims related to confrontation and cross-examination of witnesses and the non-unanimous jury verdict.   It further asserts that portions of petitioner's claim relating to the closing argument are procedurally barred.   The state argues that the remaining claims lack merit.[15]

## Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal habeas corpus legislation, including 28 U.S.C. § 2254.   Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both.   The amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that

---

[12] St. Rec. Vol. 5 of 5, 4th Cir. Order, 2015-K-0750, 8/20/15.
[13] State ex rel. Jackson v. State, 201 So.3d 878 (La. 2016); St. Rec. Vol. 5 of 5, La. Supreme Court Order, 2015-KH-1746, 10/10/16.
[14] Rec. Doc. 3.
[15] Rec. Doc. 14.

state-court convictions are given effect to the extent possible under law."  Bell v. Cone, 535 U.S. 685, 693 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning."  Bell, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases.  A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir. 2010) (internal quotation marks, ellipses, brackets, and footnotes omitted).

Regarding the "unreasonable application" clause, the United States Supreme Court has held: "[A] state-court decision is an unreasonable application of our clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." White v. Woodall, 134 S. Ct. 1697, 1706 (2014). However, the Supreme Court cautioned:

> Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error. Thus, if a habeas court must extend a rationale before it can apply to the facts at hand, then by definition the rationale was not clearly established at the time of the state-court decision. AEDPA's carefully constructed framework would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law.

Id. (citations and quotation marks omitted). Therefore, when the Supreme Court's "cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established Federal law." Wright v. Van Patten, 552 U.S. 120, 126 (2008) (quotation marks and brackets omitted). The Supreme Court has also expressly cautioned that "an unreasonable application is different from an incorrect one." Bell, 535 U.S. at 694. Accordingly, a state court's merely incorrect application of Supreme Court precedent simply does not warrant habeas relief. Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").

While the AEDPA standards of review are strict and narrow, they are purposely so. As the United States Supreme Court has held:

[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.

If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a guard against *extreme malfunctions* in the state criminal justice systems, *not a substitute for ordinary error correction through appeal. As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

Harrington v. Richter, 562 U.S. 86, 102-03 (2011) (citations omitted; emphasis added); see also

Renico v. Lett, 559 U.S. 766, 779 (2010) ("AEDPA prevents defendants – and federal courts – from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.").

The Supreme Court has expressly warned that although "some federal judges find [28 U.S.C. § 2254(d)] too confining," it is nevertheless clear that "all federal judges must obey" the law and apply the strictly deferential standards of review mandated therein. White, 134 S. Ct. at 1701.

### Facts

On direct appeal, the Louisiana Fourth Circuit Court of Appeal summarized the facts of this case as follows:

**Eyewitness testimony**
James Bradley was one of the State's key witnesses at trial. He explained that the victim, Westbrook, was like a brother to him; the two had been close friends since childhood and were living and working together at the time of Westbrook's murder. According to Bradley, he and Westbrook were having drinks at Lucky's Lounge on July 10, 2008, when Westbrook got into a verbal argument with another friend, Roderick "Rock" McKinney, who had cut in on his dance partner. According to Bradley, that argument ended when Westbrook got into a second

argument with another bar patron, Samuel Mack. Bradley also observed Mack talking on the phone around the time of their argument.

Bradley testified that he and Westbrook were getting ready to leave the bar when Westbrook stepped out of the car to hug and continue making amends with McKinney. Terakeitha Calloway also walked up to hug Westbrook. Bradley was waiting for Westbrook to get back inside the car when he heard a gunshot. He then looked up and observed the defendant, Jackson, put a gun to back of Westbrook's head and fire a second shot. Bradley estimated being approximately three to four feet away from Westbrook when the shooting occurred.

Edwin Nelson also testified as an eyewitness to the shooting at trial. He explained that he arrived at Lucky's Lounge shortly after Westbrook's argument with McKinney had ended. He followed Westbrook, McKinney, and Mack outside to find out what was going on when he observed another argument between Westbrook and Mack. Nelson also observed Mack place a call from his cell phone during this argument. Nelson never saw Samuel Mack again that night.

Later, as Nelson sat in his car, preparing to leave behind Westbrook and Bradley, Nelson observed McKinney walk up to Westbrook's window and ask if everything was okay. Westbrook then got out of his car and gave McKinney "dap" and a hug. Nelson was changing his radio when he heard the first shot; he then looked up to see Jackson standing behind Westbrook with a gun pointed at his head. He observed the defendant shoot Westbrook a second time as he was falling. Nelson estimated that the shooting occurred approximately 30–45 minutes after Mack made a call on his cell phone.

**Testimony of Detective Burns**

New Orleans Police Department Detective Kevin Burns, Jr., testified on behalf of the State at trial. After arriving on the scene of the crime, he interviewed Bradley, McKinney, and Ronald Ruffin, who was also at the bar that night. Other officers interviewed Nelson and Calloway the night of the shooting; Detective Burns spoke with Calloway the following morning.

Detective Burns testified regarding photographic lineups of Jackson that were compiled and shown to Bradley, Nelson, and Calloway. Without testifying as to what any of the witnesses told him, Detective Burns explained that he obtained arrest warrants for Jackson for the first degree murder of Mark Westbrook and attempted first degree murder of Ms. Calloway after displaying the lineups to these witnesses.

Detective Burns also testified concerning statements made by Jackson after his arrest. Jackson told the detective that he heard that Samuel Mack had killed Mark Westbrook. He personally denied any role in the shooting and claimed that he was at a hotel in Slidell when the shooting occurred. Jackson was able to identify Mack in a photographic lineup and said that the two had been friends for twenty years.

During questioning Jackson also blurted out, "Terakeitha Calloway is not coming to court anyway, so I'm straight." When Detective Burns asked Jackson who Calloway was, he replied that she was the victim who had been shot at the bar. Jackson claimed he knew this because he had read it in The Times–Picayune the day after the shooting. In response, Detective Burns told Jackson that victims'

names are not placed in the newspaper until family members are notified; he testified that because of this, he believed that Jackson was lying. Jackson also told the detective that he lived across the street from Ms. Calloway. Calloway, in fact, did not testify at trial.

**Other corroborating evidence**

Cell phone records were introduced at trial to corroborate testimony by Nelson and Bradley, who each testified that they observed Samuel Mack on his cell phone around the time of his argument with Westbrook. These records confirmed that a total of eleven calls were placed between Jackson and Mack around the time of the shooting. In addition, five of these calls were made within thirty minutes of the shooting.

The coroner's testimony also corroborated that of Nelson and Bradley. He explained that Mark Westbrook suffered two shotgun wounds. The fatal blast entered the back of his neck at the base of the skull and came out of his right cheek. A second bullet went into Westbrook's left shoulder and came out of his chest. The coroner was of the opinion that the shots were inflicted at close range because he observed small particles of gun powder on Westbrook's skin below the hole entry point. Both Nelson and Bradley testified to looking up after hearing the first gun shot and then observing Jackson fire the second shot from behind Westbrook.[16]

### Petitioner's Claims

### Claims 1 and 3 - Unexhausted/Procedurally Barred Claims

The state correctly argues that Jackson failed to exhaust his claims of violation of his right to confront and cross-examine witnesses and that the non-unanimous verdict violated his right to due process. Further, as the state also correctly notes in its response, those unexhausted claims would be procedurally barred.

Federal law provides: "Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." Baldwin v. Reese, 541 U.S. 27, 29 (2004) (quotation marks omitted). The United States Supreme Court has explained:

> The exhaustion doctrine is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings. Under our federal system, the federal and state courts are equally bound to guard and protect rights secured by the Constitution. Because it would be unseemly in

---

[16] Jackson, 115 So.3d at 1158-59; St. Rec. Vol. 3 of 5, 4th Cir. Order, 2012-KA-0090, pp. 2-5, 4/24/13.

> our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation, federal courts apply the doctrine of comity, which teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter.

Rose v. Lundy, 455 U.S. 509, 518 (1982) (citations, footnote, quotation marks, and brackets omitted).

Therefore, "[t]o exhaust, a petitioner must have fairly presented the substance of his claim to the state courts." Wilder v. Cockrell, 274 F.3d 255, 259 (5th Cir.2001) (internal quotation marks omitted). Generally, the exhaustion requirement is satisfied only when the grounds urged in a federal petition were previously presented to the state's *highest court* in a procedurally proper manner according to state court rules. Dupuy v. Butler, 837 F.2d 699, 702 (5th Cir.1988). Thus, to have exhausted his claims in state court, Jackson must have fairly presented the same claims and legal theories he urges in this federal court to the state courts through the Louisiana Supreme Court.

The record shows that Jackson has not allowed the state courts one full round of review on two claims raised in the original petition. Jackson's confrontation clause and non-unanimous verdict claims were not among those raised in his post-appeal writ application to the Louisiana Supreme Court.[17]

Jackson, therefore, has failed to exhaust available state court remedies as to the confrontation clause and non-unanimous verdict claims. See Whitehead, 157 F.3d at 387 (citing Nobles, 127 F.3d at 420). Ordinarily, a mixed petition such as this would be dismissed to allow the petitioner to exhaust state court remedies. Pliler v. Ford, 543 U.S. 225, 233 (2004).

---

[17] In his post-appeal writ application to the Louisiana Supreme Court, Jackson argued that the prosecution gave an improper closing argument. St. Rec. Vol. 5 of 5, La. S. Ct. Writ Application, 13 KO 1235, 5/21/13.

The United States Fifth Circuit Court of Appeals has held that "when a prisoner fails to exhaust available state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred," then the claims are likewise considered defaulted in federal court. Nobles v. Johnson, 127 F.3d 409, 420 (5th Cir. 1997) (internal quotation marks omitted). In the instant case, there is little doubt that any new attempt by petitioner to seek post-conviction relief would be rejected by the state courts on procedural grounds. In fact, the Louisiana Supreme Court expressly noted as much in its denial of petitioner's collateral-review writ application, stating:

> Relator has now fully litigated his application for post-conviction relief in state court. Similar to federal habeas relief, see 28 U.S.C. § 2244, Louisiana postconviction procedure envisions the filing of a second or successive application only under the narrow circumstances provided in La.C.Cr.P. art. 930.4 and within the limitations period as set out in La.C.Cr.P. art. 930.8. Notably, the Legislature in 2013 La. Acts 251 amended that article to make the procedural bars against successive filings mandatory. Relator's claims have now been fully litigated in accord with La.C.Cr.P. art. 930.6, and this denial is final. Hereafter, unless he can show that one of the narrow exceptions authorizing the filing of a successive application applies, relator has exhausted his right to state collateral review.[18]

As a result, petitioner's unexhausted claims are procedurally barred from federal relief unless he demonstrates either that (1) both "cause" exists for his default and "prejudice" would result from the application of a procedural bar or (2) the Court's failure to address the claims would result in a "fundamental miscarriage of justice." See, e.g., Bagwell v. Dretke, 372 F.3d 748, 756-57 (5th Cir. 2004).

"To establish cause for a procedural default, there must be something *external* to the petitioner, something that cannot fairly be attributed to him." Johnson v. Puckett, 176 F.3d 809, 816 (5th Cir. 1999) (quotation marks omitted) (emphasis in original). Here, petitioner has not established cause for his procedural default of his claims, and, "[a]bsent a showing of cause, it is

---

[18] State ex rel. Jackson, 201 So.3d at 878; St. Rec. Vol. 5 of 5, La. S. Ct. Order, 15-KH-1746, 10/10/16.

not necessary for the court to consider whether there is actual prejudice." Martin v. Maxey, 98 F.3d 844, 849 (5th Cir. 1996).

In that petitioner has not met the "cause and prejudice" test, his unexhausted claims are barred from federal review unless the application of the procedural bar would result in a "fundamental miscarriage of justice." In order to establish that there would be a "fundamental miscarriage of justice," a petitioner must "make a persuasive showing that he is actually innocent of the charges against him. Essentially, the petitioner must show that, as a factual matter, he did not commit the crime for which he was convicted." Finley v. Johnson, 243 F.3d 215, 220 (5th Cir. 2001) (citations omitted). However, the United States Supreme Court has cautioned:

> To be credible, such a claim [of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial. Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful.

Schlup v. Delo, 513 U.S. 298, 324 (1995).

In evaluating the reliability of the new evidence, the court may "consider how the timing of the submission and the likely credibility of the affiants bear on the probable reliability of that evidence." Schlup, 513 U.S. at 332. After considering all the evidence, the habeas court makes a " 'probabilistic determination about what reasonable, properly instructed jurors would do.' " House v. Bell, 547 U.S. 518, 538 (2006) (quoting Schlup, 513 U.S. at 329).

Jackson attempts to make a colorable showing of factual innocence by presenting an affidavit from James Duncan dated May 28, 2015. Duncan states in the affidavit that Jackson was with him in a hotel room in Slidell from 10:00 p.m. on July 10, 2008, until Jackson called Samuel Mack and learned that Calloway had been shot.[19]

---

[19] Rec. Doc. 3, pp. 239-240.

Jackson has not met the rigorous burden of proof imposed under the actual innocence exception based on the foregoing newly proffered evidence. Even assuming the affidavit submitted by Jackson to the state courts five years after his conviction and sentence constitutes "new" evidence, which is doubtful considering Jackson's admission that he knew all along that Duncan possessed material information relevant to his case that his attorney failed to obtain,[20] it still fails to establish a colorable claim of actual innocence because the affidavit is not reliable. Initially, the affidavit, submitted years after the murder and trial, is inherently suspect. See Schlup, 513 U.S. at 298 (timing of submission and likely credibility of the affiants a consideration in probable reliability of new evidence submitted to establish claim of actual innocence); see also Herrera v. Collins, 506 U.S. 390, 423 (1993) (last minute affidavits treated with "fair degree of skepticism," as "when a prisoner's life is at stake, he can often find someone new to vouch for him.). The inexplicable delay in Jackson's production of the affidavit from Duncan whom he knew existed at the time of trial and believed had valuable information to support an alibi defense undermines the credibility of his actual innocence claim.

Second, Duncan and petitioner have been friends (or at least acquaintances) since before the time of the crime. Duncan's preexisting relationship with petitioner renders his affidavit inherently suspect. See, e.g., Milton v. Secretary, Department of Corrections, 347 F. App'x 528, 531 (11th Cir. 2009) (finding the reliability of petitioner's affidavits suspect because they were executed by friends or fellow inmates).

Third, Duncan's statement that Mack told petitioner that Calloway had been shot contradicts Jackson's statement given to police. After he had been arrested, petitioner told Detective Burns that he learned that Calloway had been shot when he read a July 11, 2008

---

[20] Rec. Doc. 3, p. 54.

newspaper article about the shooting.[21]    Fourth, there is evidence in the form of Sprint cell logs detailing the cell tower locations that received signals from Jackson's cellular telephone in and around the time of the murder.[22]    It appears from the record that the evidence, which the state agreed to exclude in its case in chief due to its late disclosure of the evidence[23], would further call into question Duncan's credibility.

Finally, Duncan's inherently unreliable affidavit is not sufficient, when considered in light of all of the evidence presented at trial, to show that it is more likely than not that no reasonable juror would have convicted Jackson.    In this case, two eyewitnesses identified Jackson as the murderer.    James Bradley testified that he saw Samuel Mack make a phone call around the time that Westbrook and Mack got into an argument.[24]    Bradley testified that he heard a gunshot while waiting on Westbrook's car and that he looked up and saw Jackson shoot Westbrook in the back of the head.[25]    Bradley estimated that he was about three to four feet away from the shooting.[26]    Edwin Nelson testified that he saw Mack make a phone call about 30 to 45 minutes before the shooting but never saw him again that night.[27]    Nelson testified that after hearing the first shot, he observed Jackson shoot Westbrook for a second time.[28]    Cell phone evidence demonstrated that eleven calls were made between Mack and Jackson at the time of the shooting.[29]

---

[21] St. Rec. Vol. 1 of 5, Supplemental Police Report, p. 48, 7/11/08; Supp. St. Rec. Vol. 2 of 3, Trial Transcript, pp. 120-121, 11/17-18/10.

[22] St. Rec. Vol. 4 of 5, Motion to Exclude Evidence or in the Alternative Continue Case under Louisiana Code of Criminal Procedure Article 729.5, 11/15/10.

[23] St. Rec. Vol. 4 of 5, Order, 11/15/10; Docket Master, 11/15/10.

[24] Supp. St. Rec. Vol. 2 of 3, Trial Transcript, pp. 219-220, 11/17-18/10; Supp. St. Rec. Vol. 3 of 3, Trial Transcript (con't), pp.249-251, 11/17-18/10.

[25] Supp. St. Rec. Vol. 2 of 3, Trial Transcript, pp. 220-225, 11/17-18/10.

[26] Id., at pp. 222-223.

[27] Supp. St. Rec. Vol. 2 of 3, Trial Transcript, pp. 272-273, 286, 11/19/10.

[28] Id., at pp. 280-283, 285.

[29] Supp. St. Rec. Vol. 2 of 3, Trial Transcript, pp. 200-203, 11/17-18/10

Here, Duncan's affidavit does not show that Jackson was factually innocent of second degree murder. Duncan's assertion that petitioner was in Slidell at the time of the murder establishes only the existence of conflicting evidence and credibility issues. Bosley v. Cain, 409 F.3d 657, 665 (5th Cir. 2005). Even if the new evidence could have created a reasonable doubt in the minds of some jurors, this evidence does not satisfy the exacting standard for proving actual innocence for which a petitioner must demonstrate that it is more likely than not that *no* reasonable juror would have convicted him in light of the new evidence. Schlup, 513 U.S. at 327 (emphasis added).

For these reasons, petitioner's unexhausted claims relating to violation of his right to confront and cross-examine witnesses and that the non-unanimous verdict violated his right to due process of law are procedurally barred and should not be considered by this Court.

## **Prosecution Closing Argument**

Petitioner next claims that the prosecution made prejudicial and inflammatory remarks during its closing argument. He argues that the comments violated state law and that the state trial court erred in failing to grant a mistrial and his motions for new trial.

Petitioner specifically points to five comments made by the prosecution during its rebuttal argument. The first comment compared the defense to Muhammad Ali:

MR. PHILLIPS:

As I sat there, just like you did, and heard everything he said, and you know what it reminded me of? It reminded me of a man by the name of Muhammad Ali. I am going to tell you why. Of course we know him as probably the most prolific greatest boxer of all time, but you know what he was also a master of?
MR. ENGLEBERG:

Objection, Your Honor.

THE COURT:

Overruled.

MR. PHILLIPS:

    Distraction.  Let me tell you how.  Do you remember, sometimes you watch those old fights, you see all that footwork Mohammad Ali used to do?  Well, why did he do that?  To get you to look at his feet so he hits you with the right or the left.

MR. ENGLEBERG:

    Objection, Your Honor.

THE COURT:

    Overruled.

MR. ENGLEBERG:

    This is outside the evidence --

THE COURT:

    Overruled.

MR. PHILLIPS:

    Or you watch some of those old fights and you hear him talking before the fights, sometimes you hear him talking during the fight, you see him talking.  Well, why is he doing that?  To distract you –

MR. GREEN:

    Your Honor, this is outside the evidence.

THE COURT:

    Approach the bench.

(BENCH CONFERENCE)[30]

The second statement by the prosecutor that petitioner contends was inappropriate is as follows:

---

[30] Supp. St. Rec. Vol. 3 of 3, Trial Transcript, pp. 444-445, 11/19/10.  The bench conference was not transcribed.

MR. PHILLIPS:

> They do these things because they don't want you to look at what really matters in a case. And they get up and they tell you this is how an innocent man goes to Angola. Well, this is how innocent people get killed. That is what it is about. That is how innocent people get killed....[31]

Petitioner next contends that the prosecutor made the statement "They are lying to you" on several occasions.[32] However, the trial transcript does not reflect that any such statement was made.

The fourth statement petitioner points to as improper is that the prosecutor told the jury the following:

MR. PHILLIPS:

> Can I see the defense exhibits, the arrest registers? Remember that arrest register they showed you? Well, you know what, you all remember, you all remember this. Too late to hide it now because y'all saw it and y'all remember it.

MR. GREEN:

> Your Honor, --

MR. PHILLIPS:

> But you remember—

MR. GREEN:

> I object to him saying we are hiding things.

THE COURT:

> Take a seat, please. Objection sustained. Ladies and gentlemen, disregard that last remark.[33]

The fifth and final statement petitioner claims was objectionable is as follows:

---

[31] Id., at p. 446.
[32] Rec. Doc. 3, p. 35.
[33] Id., at p. 461.

MR. PHILLIPS:

    Ladies and gentlemen, you also heard him say when he talked to the detective, "Terakeitha's not coming to court anyway, so I'm gonna be straight. She not coming to court anyway." She lives across the street from him, he told the detective that. Why wouldn't I want this person that's been shot—

MR. GREEN:

    Your Honor, objection.

THE COURT:

    No, no, now you are overruled.

MR. PHILLIPS:

    Why wouldn't I want somebody who has been shot, who's been shot, to come to court and say I didn't shoot them. Why wouldn't I? Why wouldn't I? Why wouldn't I?

MR. GREEN:

    Your Honor, I object to –

THE COURT:

    Okay, approach the bench. Listen. Listen, first of all, don't testify. Don't testify. All I need you to do is say objection, okay? Now approach the bench, all of you.

(BENCH CONFERENCE)[34]

In the last reasoned state court opinion addressing the claim, the Fourth Circuit

    In the defendant's third assignment of error, he argues that the trial court allowed the State to make impermissible comments during closing arguments, which tainted the jury against defense counsel and created reversible error. In particular, he claims that the prosecutor made it appear that the defense was deceitful and that the defense was hiding things from the jury.

    Pursuant to La.C.Cr.P. art. 774, the scope of closing argument should be confined to the evidence admitted, the lack of evidence, conclusions of fact that the State or defendant may draw therefrom, and the law applicable to the case. The State's rebuttal shall be confined to answering the argument of the defendant. Id.

    While prosecutors have wide latitude with regard to tactics used during closing arguments, they should not appeal to prejudice and should refrain from

---

[34] Id., at p. 475. The bench conference was not transcribed.

making personal attacks on defense strategy and counsel.  State v. Manning, 03–1982, p. 75 (La. 10/19/04), 885 So.2d 1044, 1108; State v. Brumfield, 96–2667, p. 9 (La. 10/20/98), 737 So.2d 660, 666.  Nevertheless, even where a prosecutor exceeds that wide latitude, the reviewing court will not reverse a conviction unless thoroughly convinced that the argument influenced the jury and contributed to the guilty verdict.  State v. Taylor, 93–2201, p. 7 (La.2/28/96), 669 So.2d 364, 369.

A trial court has broad discretion in controlling the scope of closing arguments, and Louisiana courts have consistently held that great consideration should be accorded to the good sense and fair-mindedness of jurors who have seen the evidence, heard the arguments, and repeatedly been instructed by the trial judge that arguments of counsel are not evidence.  State v. Casey, 99–0023, p. 17 (La. 1/26/00) 775 So.2d 1022, 1036; State v. Mitchell, 94–2078 (La. 5/21/96), 674 So.2d 250, 258.

During rebuttal, the prosecutor compared the defense to Muhammad Ali— a "master of distraction" who would use fancy footwork and talking during fights to distract his opponents.  We find that the trial court did not err in overruling the defendant's objection to the prosecution's Ali analogy because similar arguments by prosecutors have been upheld by Louisiana courts.  For instance, in State v. Martin, 539 So.2d 1235, 1240 (La. 1989), the Louisiana Supreme Court held that closing argument referring to "smoke screen" tactics by the defense was not improper.

The prosecutor in the present case further stated, "Remember that arrest register they showed you? Well, you know what, you all remember, you all remember this.  Too late to hide it now because y'all saw it and y'all remember it."  Following this comment, the trial court sustained defendant's objection and admonished the jury to disregard the remark about hiding something.  We find that there was no error in this regard.

Referring to Jackson's statement to Detective Burns that Terakeitha Calloway would not come to court, the prosecutor asked, "[W]hy wouldn't I want somebody who has been shot, who's been shot, to come to court and say I didn't shoot them?"  This question rhetorically commented on the facts of the case and inferences that could be drawn therefrom, and was therefore not impermissible.

Other comments cited as improper by the defendant either could not be found in the record, or are not properly before us on appeal because defense counsel did not contemporaneously object at trial.  Code of Criminal Procedure Article 841 provides in pertinent part, "An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence."  See also, State v. Clark, 332 So.2d 236 (La. 1976).

Considering the record as a whole, we find that none of the prosecutor's comments contributed to the verdict or created reversible error.  Therefore, this assignment of error has no merit.[35]

The Louisiana Supreme Court offered no basis for its one word denial.[36]

---

[35] Jackson, 115 So.3d at 1166-1167; St. Rec. Vol. 3 of 5, 4th Cir. Order, 2012-KA-0090, pp. 18-21, 4/24/13.
[36] Jackson, 126 So.3d at 497; St. Rec. Vol. 5 of 5, La. S. Ct. Order, 2013-KO-1235, 12/2/13.

The state correctly argues that the portions of petitioner's claim relating to the second and third statements by the prosecutor are procedurally barred.

The United States Fifth Circuit Court of Appeals has explained:

> A claim that a state has withheld a federal right from a person in its custody may not be reviewed by a federal court if the last state court to consider that claim expressly relied on a state ground for denial of relief that is both independent of the merits of the federal claim and an adequate basis for the court's decision. To satisfy the "independent" and "adequate" requirements, the dismissal must "clearly and expressly" indicate that it rests on state grounds which bar relief, and the bar must be strictly or regularly followed by state courts, and applied to the majority of similar claims. This rule applies to state court judgments on both substantive and procedural grounds.

Finley, 243 F.3d at 218 (citations omitted).  Moreover, where a lower court has rejected a claim on procedural grounds, later opinions upholding that decision are presumed to rely on the same grounds if reasons are not assigned.  Id. ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim are presumed to rest upon the same ground.").

As noted, in the last reasoned state court opinion addressing petitioner's claim concerning the comments made during the prosecutor's closing argument that "[t]hey don't way you to look at [what] really matters—this is how innocent people get killed" and "[t]hey are lying to you again", the Louisiana Fourth Circuit Court of Appeal held that the claim was waived because either the comments had not been made or there was no contemporaneous objection, stating:

> [o]ther comments cited as improper by the defendant either could not be in the record, or are not properly before us on appeal because defense counsel did not contemporaneously object at trial.  Code of Criminal Procedure Article 841 provides in pertinent part, "An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence."  See also, State v. Clark, 332 So.2d 236 (La. 1976).

The Louisiana Supreme Court then denied petitioner's related writ applications without assigning additional reasons.[37]

The United States Fifth Circuit Court of Appeal has clearly held that Louisiana's contemporaneous objection rule is an independent and adequate state procedural rule. Duncan v. Cain, 278 F.3d 537, 541-43 (5th Cir. 2002) (citing Wainwright v. Sykes, 433 U.S. 72, 87–88, 97 S. Ct. 2497, 53 L.Ed.2d 594 (1977)). When the state court relies on this procedural default in dismissing the claim, as it did here, the claim is immune from federal review. Id. Therefore, "federal habeas review is barred unless the petitioner demonstrates either cause and prejudice or that a failure to address the claim will result in a fundamental miscarriage of justice." Hughes v. Johnson, 191 F.3d 607, 614 (5th Cir. 1999). In the instant case, for the reasons previously explained, petitioner demonstrates neither. Nor has he demonstrated that any miscarriage of justice will result from the application of the procedural bar. Accordingly, the portions of the claim relating to the second and third statements as enumerated by petitioner are procedurally barred in this federal court.

As for the three remaining statements made during the prosecution's rebuttal, to the extent that petitioner raises this issue as a violation of state law, his claim must fail as it is not cognizable on federal habeas review. See Swarthout v. Cooke, 131 S.Ct. 859, 861 (2011) (federal habeas review does not lie for errors of state law). Habeas corpus review is limited to questions of constitutional dimension, and federal courts generally do not review the admissibility of evidence under state law. Estelle v. McGuire, 502 U.S. 62, 67–68 (1991); Gonzales v. Thaler, 643 F.3d

---

[37] Jackson, 126 So.3d at 497; St. Rec. Vol. 5 of 5, La. S. Ct. Order, 2013-KO-1235, 12/2/13.

425, 429 (5th Cir. 2011); Jernigan v. Collins, 980 F.2d 292, 298 (5th Cir. 1992). Thus, the Court

can consider petitioner's arguments only in the context of federal constitutional law.[38]

Generally, a prosecutor's comment does not present a claim of constitutional magnitude in

a federal habeas action unless it is so prejudicial that the trial was rendered fundamentally unfair

in violation of the Due Process Clause. Jones v. Butler, 864 F.2d 348, 356 (5th Cir. 1988). "[I]t

is not enough that the prosecutors' remarks were undesirable or even universally condemned. The

relevant question is whether the prosecutors' comments so infected the trial with unfairness as to

make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 181

(1986) (citations and quotations omitted); accord Rogers v. Lynaugh, 848 F.2d 606, 608 (5th Cir.

1988); Bell v. Lynaugh, 828 F.2d 1085, 1095 (5th Cir. 1987). The prosecutor's remarks must be

evaluated in the context of the entire trial. Greer v. Miller, 483 U.S. 756, 765–66 (1987) (citing

Darden, 477 U.S. at 179); Kirkpatrick v. Blackburn, 777 F.2d 272, 281 (5th Cir. 1985). Thus, to

obtain federal habeas relief based on allegations of improper prosecutorial comment or argument,

a petitioner "must demonstrate that the misconduct [was] persistent and pronounced or that the

evidence of guilt was so insubstantial that the conviction would not have occurred but for the

improper remarks." Jones, 864 F.2d at 356; Hogue v. Scott, 874 F.Supp. 1486, 1533 (N.D. Tex.

1994).

District courts in the Fifth Circuit must apply a two-step analysis when reviewing claims

of prosecutorial misconduct. United States v. Wise, 221 F.3d 140, 152 (5th Cir. 2000); United

States v. Lankford, 196 F.3d 563, 574 (5th Cir. 1999). First, the court must determine whether the

---

[38] The State argues that petitioner did not fairly present a federal due process claim to the state courts and therefore has not exhausted such a claim. However, it is clear that a federal court has the authority to deny habeas claims on the merits regardless of whether the petitioner exhausted his state court remedies and whether exhaustion is waived by the state. 28 U.S.C. § 2254(b)(2); Jones v. Jones, 163 F.3d 285, 299 (5th Cir. 1998); Woods v. Cain, Civ. Action No. 06-2032, 2008 WL 2067002, at *8 n. 8 (E.D. La. May 13, 2008). Because the claim is meritless, the undersigned recommends that it simply be denied on that basis in the interest of judicial economy.

prosecutor made an improper remark. <u>Wise</u>, 221 F.3d at 152. "If an improper remark was made, the second step is to evaluate whether the remark affected the substantial rights of the defendant." <u>Id.</u>  A habeas corpus petitioner "must demonstrate that the misconduct [was] persistent and pronounced or that the evidence of guilt was so insubstantial that the conviction would not have occurred but for the improper remarks." <u>Jones</u>, 864 F.2d at 356; <u>accord</u> <u>Hogue v. Scott</u>, 874 F.Supp. 1486, 1533 (N.D. Tex. 1994).  Under this test, a petitioner must demonstrate that the comment rendered his trial "fundamentally unfair," by showing "a reasonable probability that the verdict might have been different had the trial been properly conducted." <u>Rogers</u>, 848 F.2d at 609 (footnote and citations omitted).  "In attempting to establish that a prosecutor's improper comments constitute reversible error, the criminal defendant bears a substantial burden." <u>United States v. Virgen-Moreno</u>, 265 F.3d 276, 290 (5th Cir. 2001) (citing <u>United States v. Diaz-Carreon</u>, 915 F.2d 951, 956 (5th Cir. 1990)).  When determining the effect of the prosecutors' impermissible comments, this Court considers three factors: "the magnitude of the prejudicial effect of the remark, the efficacy of any cautionary instruction, and the strength of the evidence of the defendant's guilt." <u>United States v. Bermea</u>, 30 F.3d 1539, 1563 (5th Cir. 1994), <u>cert. denied</u>, 513 U.S. 1156, 115 S.Ct. 1113, 130 L.Ed.2d 1077 (1995); <u>United States v. Palmer</u>, 37 F.3d 1080, 1085 (5th Cir. 1994).

The state court found that the prosecutor's Muhammed Ali analogy was not improper under state law.  Even under federal law, comments similar to those made here are not inappropriate. <u>United States v. Mares</u>, 402 F.3d 511, 516 (5th Cir. 2005) ("the prosecutor's statements in this case, that defense counsel "wants you [the jury] to get lost behind a file of smoke," do not rise to the level of a challenge of either the integrity or the character of the defense counsel."); <u>Gamble v. Director, TDCJ–CID</u>, Civ. Action No. 6:08cv410, 2010 WL 1544293, at *5-6 (E.D. Tex. April

19, 2010) (prosecution's argument referring to defense counsel's arguments as "rabbit trails" and "smoke screens" was not inappropriate where "[t]he prosecutor merely argued that defense counsel's argument in closing was intended to turn the jury's attention away from the evidence adduced by the prosecution."); Lange v. Quarterman, Civ. Action No. H–07–3492, 2009 WL 3007917, at *23-24 (S.D. Tex.Sept.18, 2009) (prosecution's argument that defense was trying to "generate enough dust and smoke" and reference to "rabbit trails" was an attack on the strength of the defense on the merits and not the integrity of defense counsel and was not improper); Sennholz v. Strahota, 722 F. App'x 569, 572-73 (7th Cir. 2018) ("The comment that there was nothing to the defense case and that it was "smoke and mirrors" was merely an argument that the jury should not be misled by the defense argument and should focus on evidence.")

Next, in a very brief portion of rebuttal, the prosecutor referred to petitioner's statement to police that he was "gonna be straight" because Terakeitha Calloway was not going to come to court.[39]  He suggested that the statement was a result of a slip of the tongue.[40]  The prosecutor then questioned: "Why wouldn't I want somebody who has been shot, who's been shot, to come to court and say I didn't shoot them.  Why wouldn't I?  Why wouldn't I?  Why wouldn't I?"[41]  This rhetorical question was not a comment on petitioner's failure to testify, but rather a reference to petitioner's statement to Detective Burns.  The comments questioned how petitioner's statement to Detective Burns could be explained and why a person who had not committed the murder would not want the victim to come to court and confirm that he wasn't the shooter.  Such an argument is not improper.  See Labrake v. Stowitzky, Civ. Action No. 07–0212, 2009 WL 2924808, at *6 (E.D. Pa. Jan. 30, 2009) (prosecutor's remarks during closing argument questioning why petitioner said

---

[39] Supp. St. Rec. Vol. 3 of 3, Trial Transcript, p. 475, 11/19/10.
[40] Id., at p. 474.
[41] Id., at p. 475.

23

"I can't believe they let me go" while he was being driven home from the police station was permissible comment on petitioner's conduct after the victim's death), report and recommendation adopted, 2009 WL 2854747 (E.D. Pa. Sept.3, 2009).

Certainly, the prosecutor's suggestion that defense counsel was "hiding things" was improper and the trial court properly sustained the defense's objection and instructed the jury to disregard the remark. However, as the state court correctly noted, the fact that a prosecutor makes an improper comment during closing argument does not mean that petitioner is entitled to relief. On the contrary, the United States Fifth Circuit Court of Appeals has held:

> Even if ... [a] prosecutor's remarks [are] improper, prosecutorial remarks are a sufficient ground for habeas relief only if they are so prejudicial that they render the trial fundamentally unfair. Such unfairness exists only if the prosecutor's remarks evince either persistent and pronounced misconduct or the evidence was so insubstantial that (in probability) but for the remarks no conviction would have occurred.

Harris v. Cockrell, 313 F.3d 238, 245 (5th Cir.2002) (internal quotation marks, ellipsis, and footnote omitted); see also Jones v. Butler, 864 F.2d 348 (5th Cir.1989). In other words, a prosecutor's remarks warrant habeas relief only if they were "a crucial, critical, highly significant factor upon which the jury based its verdict." Harris, 313 F.3d at 245.

In the instant case, even if all the enumerated comments were improper, petitioner is not entitled to relief under that high standard. The prosecutor's comments were neither persistent nor pronounced. The jury was instructed that the attorneys' closing arguments were not evidence,[42] and there is no reason to believe that they disregarded that instruction. Weeks v. Angelone, 528 U.S. 225, 234 (2000) ("A jury is presumed to follow its instructions."). Furthermore, the evidence of petitioner's guilt was far from insubstantial. When the argument of the prosecution is viewed in its entirety along with the evidentiary record and the context of the overall trial, the remarks

---

[42] Supp. St. Rec. Vol. 3 of 3, Trial Transcript, p. 482, 11/19/10.

simply cannot be considered a "crucial, critical, highly significant factor" in the jury's verdict and, therefore, did not render petitioner's trial fundamentally unfair.

Accordingly, the state court's decision rejecting this claim is entitled to deference under the AEDPA because it simply was not unreasonable or contrary to clearly established federal law.

### Ineffective Assistance of Counsel

Petitioner raises various claims of ineffective assistance of counsel in his petition. Specifically, petitioner contends his counsel rendered constitutionally ineffective performance in failing to: (1) investigate, interview and call witnesses; (2) cross-examine the state expert who testified regarding cell phone records; and (3) file a notice of alibi and investigate alibi witnesses. Petitioner raised these claims in his post-conviction application, and the trial court found the claims to be meritless.[43]  The Fourth Circuit found no error in the trial court's denial of the application.[44] The Louisiana Supreme Court denied petitioner's related writ application finding he failed to show he received ineffective assistance of counsel under the standard of Strickland v. Washington, 466 U.S. 668, 104 S. Ct.2052, 80 L.Ed.2d 674 (1984).[45]

Because ineffective assistance of counsel claims present mixed questions of law and fact, this Court must defer to the state court decision rejecting such claims unless that decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1); Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002).  Moreover, the United States Supreme Court has explained that, under the AEDPA, federal habeas corpus review of an ineffective assistance of counsel claim is in fact *doubly* deferential:

---

[43] St. Rec. Vol. 1 of 5, Minute Order, 6/16/15.
[44] St. Rec. Vol. 5 of 5, 4th Cir. Order, 2015-K-0750, 8/20/15.
[45] State ex rel. Jackson, 201 So.3d at 878; St. Rec. Vol. 5 of 5, La. S. Ct. Order, 15-KH-1746, 10/10/16.

The pivotal question is whether the state court's application of the <u>Strickland</u> standard was unreasonable. This is different from asking whether defense counsel's performance fell below <u>Strickland</u>'s standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a <u>Strickland</u> claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the <u>Strickland</u> standard itself.

A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision. <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004). And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." <u>Ibid</u>. "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." <u>Knowles v. Mirzayance</u>, 556 U.S. ____, ____, 129 S.Ct. 1411, 1413-14, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted).

<u>Harrington v. Richter</u>, 562 U.S. 86, 101 (2011) (citation omitted). The Supreme Court then explained:

Surmounting <u>Strickland</u>'s high bar is never an easy task. An ineffective assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the <u>Strickland</u> standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence. The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.

Establishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult. *The standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.* The <u>Strickland</u> standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under <u>Strickland</u> with unreasonableness under § 2254(d). *When § 2254(d) applies, the question is not whether counsel's actions*

26

> *were reasonable. The question is whether there is any reasonable argument that*
> *counsel satisfied Strickland's deferential standard.*

Id. at 105 (citations omitted; emphasis added). Therefore, on a habeas review of an ineffective assistance claim, "federal courts are to afford *both* the state court *and* the defense attorney the benefit of the doubt." Woods v. Etherton, 136 S. Ct. 1149, 1151 (2016) (emphasis added; quotation marks omitted). For the following reasons, the Court finds that, under those stringently deferential standards, it simply cannot be said that relief is warranted with respect to petitioner's ineffective assistance of counsel claims.

The clearly established federal law which governs ineffective assistance of counsel claims is set forth in Strickland v. Washington, 466 U.S. 668 (1984). Strickland established a two-prong test for evaluating such claims. Specifically, a petitioner seeking relief must demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense. Id. at 697. A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000). If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong. Strickland, 466 U.S. at 697.

To prevail on the deficiency prong of the Strickland test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. See Strickland, 466 U.S. at 689. "[I]t is

necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'"  Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690).  A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.  See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

Petitioner claims that his counsel failed to adequately investigate the case and interview and call witnesses including Terakeitha Calloway, Rodrick McKinney, Ronald Ruffin, and James Duncan.  He claims that Calloway, McKinney and Ruffin would have testified that petitioner was not the shooter.  He further claims that Duncan and an unidentified female would have testified that petitioner was with them in a hotel in Slidell at the time of the murder.

To prevail on a claim concerning inadequate investigation and preparation, a petitioner must show that a more thorough investigation or better preparation would have in fact benefited the defense.  In other words, he must show that allegedly exculpatory evidence existed and would have been revealed through additional efforts.  See Moawad v. Anderson, 143 F.3d 942, 948 (5th Cir. 1998); see also Brown v. Dretke, 419 F.3d 365, 375 (5th Cir. 2005); Wilson v. Cain, Civ. Action No. 06-890, 2009 WL 2163124, at *22 (E.D. La. July 16, 2009), aff'd, 641 F.3d 96 (5th Cir. 2011); Davis v. Cain, Civ. Action No. 07-6389, 2008 WL 5191912, at *10 (E.D. La. Dec. 11, 2008).

Petitioner offers no evidence that his counsel actually failed to investigate and interview Calloway, McKinney, Ruffin, and Duncan.  In fact, the record reflects, and petitioner admits, that a defense investigator interviewed Calloway.[46]  Nonetheless, even if petitioner were able to establish that his counsel failed to investigate the case, that alone would not suffice.  Petitioner

---

[46] Rec. Doc. 3, pp. 54-55, 110-117.

must further establish that the investigation would have resulted in a reasonable probability that the outcome of the trial would have been different. Petitioner has not established that either McKinney or Ruffin would in fact have supported his version of events if they had been interviewed.[47] That defect is fatal, because a petitioner's bare speculation that additional investigation would have resulted in a different outcome at trial is insufficient to prove the prejudice required to prevail on such a claim. See Thomas v. Cain, Civ. Action No. 09-4425, 2009 WL 4799203, at *9 (E.D. La. Dec. 9, 2009).

That same defect also exists with respect to petitioner's related claim that counsel was ineffective for failing to call all of the purported witnesses to testify at the trial. As the United States Fifth Circuit Court of Appeals has explained:

> Claims that counsel failed to call witnesses are not favored on federal habeas review because the presentation of witnesses is generally a matter of trial strategy and speculation about what witnesses would have said on the stand is too uncertain. For this reason, *we require petitioners making claims of ineffective assistance based on counsel's failure to call a witness to demonstrate prejudice by naming the witness, demonstrating that the witness was available to testify and would have done so, setting out the content of the witness's proposed testimony, and showing that the testimony would have been favorable to a particular defense.* This requirement applies to both uncalled lay and expert witnesses.

Woodfox v. Cain, 609 F.3d 774, 808 (5th Cir. 2010) (citations, quotation marks, and brackets omitted; emphasis added); accord Day v. Quarterman, 566 F.3d 527, 538 (5th Cir. 2009) ("[T]o prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done

---

[47] McKinney told police that, prior to the shooting, Mack and Westbrook had argued and that Mack asked the victim, "Do you know who I am? Do you know what I am capable of?" St. Rec. Vol. 1 of 5, Supplemental Police Report, p.23, 7/11/08. McKinney did not actually witness the shooting but saw an armed man leaving the scene. Id. McKinney insisted that Mack was not the shooter. Id., at p. 33. McKinney was shown a lineup that included petitioner's photograph but he would not identify Jackson as the shooter out of fear of retaliation. Id., at p. 40. Ruffin merely speculated that Mack was responsible for the shooter because Westbrook had told Ruffin that Mack was going to kill him. Id., at pp. 24-25. Ruffin could not be located to be shown a lineup including petitioner's photograph. Id., at p. 40.

so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense.").

Petitioner presented no evidence, such as affidavits from either McKinney or Ruffin demonstrating that they would have testified in a manner beneficial to the defense.  While he contends that a female was present with him in a hotel room in Slidell on the night of the shooting, he fails to identify her by name.  Therefore, again, he obviously failed to meet his burden of proof with respect to this claim as it relates to these three uncalled witnesses.  See, e.g., United States v. Cockrell, 720 F.2d 1423, 1427 (5th Cir. 1983) (courts view "with great caution claims of ineffective assistance of counsel when the only evidence of a missing witness's testimony is from the defendant"); Buniff v. Cain, Civ. Action No. 07-1779, 2011 WL 2669277, at *3 (E.D. La. July 7, 2011); Anthony v. Cain, Civ. Action No. 07-3223, 2009 WL 3564827, at *8 (E.D. La. Oct. 29, 2009) ("This Court may not speculate as to how such witnesses would have testified; rather, a petitioner must come forward with evidence, such as affidavits from the uncalled witnesses, on that issue."); Combs v. United States, Nos. 3:08-CV-0032 and 3:03-CR-0188, 2009 WL 2151844, at *10 (N.D. Tex. July 10, 2009) ("Unless the movant provides the court with affidavits, or similar matter, from the alleged favorable witnesses suggesting what they would have testified to, claims of ineffective assistance of counsel fail for lack of prejudice."); Harris v. Director, TDCJ-CID, No. 6:06cv490, 2009 WL 1421171, at *7 (E.D. Tex. May 20, 2009) ("Failure to produce an affidavit (or similar evidentiary support) from the uncalled witness is fatal to the claim of ineffective assistance.").

Further, petitioner has not established that McKinney, Ruffin or the unidentified female were actually available to testify at trial.  The requirement that a petitioner present evidence that a proposed witness was available to testify at trial and would have done so is a prerequisite to the

granting of relief, not "a matter of formalism." Woodfox, 609 F.3d at 808. Therefore, this claim as it relates to McKinney, Ruffin and the unidentified female necessarily fails.

Jackson's claim that defense counsel failed to subpoena Calloway to testify is refuted by the record. Defense counsel included Calloway on a witness list as early as June 2009.[48] Additionally, the record demonstrates that defense counsel sought and had issued a subpoena for Calloway to testify at trial.[49] The record does not include a return of the subpoena. Based on the state's severance and ultimate dismissal of count two and defense counsel's statement during closing argument that "I wish to God that Terakeitha Calloway was here. I wish she could make it."[50], it is probable that Calloway could not be located. Alternatively, defense counsel may have made a strategic decision not to present Calloway's testimony as she had previously identified Jackson as the shooter and would have been stringently cross-examined.[51]

Jackson also faults his counsel's failure to subpoena Duncan to testify for the defense as an alibi witness. As previously explained in detail, the reliability of Duncan's proposed testimony is questionable. However, even accepting that Duncan would have testified consistent with his affidavit that petitioner was with him in Slidell at the time of the shooting, counsel's failure to present such testimony was not unreasonable. The state possessed evidence that would have demonstrated the location of Jackson's phone at the time of the phone calls based on cell phone data.[52] Due to its late disclosure of the evidence, the state agreed not to introduce the evidence in its case in chief.[53] Had Duncan testified as an alibi witness for the defense, the state would have

---

[48] St. Rec. Vol. 1 of 5, Defense Witness List, 6/29/09.
[49] St. Rec. Vol. 1 of 5, Minutes, 11/18/20; St. Rec. Vol. 2 of 5, Defense's Request for Instanter Subpoena, 11/18/20; Subpoena, 11/18/20.
[50] Supp. St. Rec. Vol. 3 of 3, Trial Transcript, p. 433, 11/19/10.
[51] St. Rec. Vol. 1 of 5, Supplemental Police Report, p. 39, 7/11/08.
[52] St. Rec. 2 of 5, Motion to Exclude Evidence or in the Alternative Continue Case under Louisiana Code of Criminal Procedure Article 729.5, 11/15/10.
[53] Id.; St. Rec. 2 of 5, Order, 11/15/10.

had the opportunity to introduce the cell phone location evidence in rebuttal.  It is likely that this damaging evidence would have severely undermined an alibi defense.  " 'Failure to present [evidence does] not constitute 'deficient' performance within the meaning of <u>Strickland</u> if [counsel] could have concluded, for tactical reasons, that attempting to present such evidence would be unwise.' "  <u>Williams v. Cockrell</u>, 31 F. App'x 832 (5th Cir. 2002) (quoting <u>Williams v. Cain</u>, 125 F.3d 269, 278 (5th Cir. 1997)).  Given the circumstances of the case, defense counsel's decision not to present Duncan's testimony as alibi evidence was sound trial strategy.  Further, petitioner has not demonstrated that the outcome of the trial would have been different, but for counsel's decision to rest the defense without Duncan's testimony.

Petitioner next claims his counsel was ineffective in failing to investigate the phone records.  He argues an investigation into the evidence would have uncovered favorable evidence that could have resulted in his acquittal.  He also argues that his counsel should have cross-examined Tyrell, the state's expert, who testified regarding a call log for Jackson's phone.

Petitioner offers no evidence that his counsel actually failed to investigate the phone records.  He offers no evidence whatsoever as to what investigative steps counsel took or failed to take with regard to the records.  To the contrary, the record shows that defense counsel received or was able to inspect the phone records including a 34-page spreadsheet detailing call dates and times and the numbers called.[54]  On November 14, 2010, the state provided the defense with a three page layout for Sprint cell towers, six pages of star codes for Sprint, and six pages of cell tower locations.[55]  Defense counsel successfully moved to exclude the evidence of cell tower locations and the location of Jackson's cell phone in and around the time of the offense based on

---

[54] St. Rec. Vol. 2 of 5, Inventory of Discovery Received and Inspected, p. 3, 8/18/10.
[55] St. Rec. 2 of 5, Motion to Exclude Evidence or in the Alternative Continue Case under Louisiana Code of Criminal Procedure Article 729.5, 11/15/10.

the state's late disclosure.[56]  Petitioner simply has not shown that additional investigation relating to the phone records would have led to exculpatory evidence.  His bare speculation is sufficient to meet his burden of proof with regard to this claim.  Thomas, 2009 WL 4799203, at *9.

Petitioner also complains that defense counsel failed to cross-examine Tyrell.  He argues that defense counsel should have asked Tyrell about earlier calls made between Jackson and Mack and that the failure to do so left the jury with the impression that the calls were "all of a sudden" and related to the shooting.  The Court notes that "[t]he decision whether to cross-examine a witness, and if so, how vigorously to challenge the witness' testimony, requires a quintessential exercise of professional judgment." Ford v. Cockrell, 315 F. Supp. 2d 831, 859 (W.D. Tex. 2004), aff'd, 135 F. App'x 769 (5th Cir. 2005); accord Lewis v. Cain, Civ. Action No. 09-2848, 2009 WL 3367055, at *8 (E.D. La. Oct. 16, 2009), aff'd, 444 F. App'x 835 (5th Cir. 2011); Williams v. Cain, Civ. Action Nos. 06-0224 and 06-0344, 2009 WL 1269282, at *11 (E.D. La. May 7, 2009), aff'd, 359 F. App'x 462 (5th Cir. 2009); Parker v. Cain, 445 F. Supp. 2d 685, 710 (E.D. La. 2006). The United States Supreme Court has cautioned courts not to second-guess counsel's decisions on such matters through the distorting lens of hindsight; rather, courts must employ a strong presumption that counsel's conduct falls within a wide range of reasonable assistance and, under the circumstances, might be considered sound trial strategy.  Strickland, 466 U.S. at 689.  It is irrelevant that another attorney might have made other choices or handled such issues differently. As the Supreme Court noted: "There are countless ways to provide effective assistance in any given case.  Even the best criminal defense attorneys would not defend a particular client in the same way." Id.

---

[56] Id.; Order, 11/15/10.

Petitioner has not met his burden with respect to his claim. This Court cannot say that counsel's failure to cross-examine Tyrell was so deficient as to violate petitioner's constitutional rights. Erik Tyrell, the records custodian for Sprint Nextel Telecommunications, testified regarding the call details record for phone number (504)377-3431 (Jackson's phone) around the time of the incident.[57] Tyrell testified that 11 calls were made between Jackson's number and (504)220-6855 (Mack's phone) between 11:36 p.m. on July 10, 2008 and 12:26 a.m. on July 11, 2008.[58] While defense counsel declined cross-examination of Tyrell, defense counsel may reasonably have chosen to do so because he did not want to tip his hand before arguing in his closing that the phone records, which the jury was able to review, were helpful to the defense as they showed that Jackson and Mack exchanged many calls on July 9, 2010 and throughout the day on July 10, 2010.[59]

During closing argument, defense counsel stated, "did you guys notice on those call records – did you notice that on all the days, before and after, there are lots of calls between Sam Mack and Ortiz Jackson? You heard they have been friends for 20 years. They have got calls from the beginning of these records to the end. There is nothing odd about that night."[60] He further utilized the phone records when he argued:

> But their story is that Sam Mack calls the shooter. Calls the shooter. And what do you see here? We know that the shooting takes place at 11:54. That has been clear, 11:54. There are no calls from Sam Mack. Yeah, I wouldn't be surprised if they didn't notice this. There is no incoming calls from Sam Mack to Ortiz Jackson. It is Ortiz Jackson calling twice, once for 19 seconds and once for 28 seconds. That is how long it is when the voice mail goes on. That is not how long it is to plan a murder, to instruct it. And remember, it's not Sam Mack calling Ortiz Jackson. So under their theory and their story, it doesn't make sense. It shows you that he is not the shooter, ladies and gentlemen.

---

[57] Supp. St. Rec. Vol. 2 of 3, Trial Transcript, pp. 195-203, 11/17-18/10.
[58] Id., at pp. 199-203.
[59] Supp. St. Rec. Vol. 3 of 3, Trial Transcript, pp. 339-344, 422-423, 11/19/10; Rec. Doc. 3, pp. 143-148.
[60] Supp. St. Rec. Vol. 3 of 3, Trial Transcript, pp. 422-423, 11/19/10.

What else does it show? Let me get my red marker. It shows you that right here, four, five minutes after the shooting there is a call from Ortiz Jackson to Sam Mack. What did you hear, ladies and gentlemen? According to them, the shooter leaves the scene with Sam Mack. That is what the detective testified to; that's what they, that's their theory. Does it make any sense? Do you think that you are calling someone that you are in the car with or leaving the scene with? No. The phone records show that Sam Mack did not do this, and that those opinions of those two friends is just flat out wrong.[61]

Even assuming, arguendo, that petitioner's counsel was deficient for failing to cross-examine Tyrell, he has not shown any prejudice given that defense counsel argued the same information in closing argument that he would have elicited on from Tyrell. Petitioner simply has not offered any evidence to demonstrate that counsel's failure to cross examine Tyrell altered the outcome of his trial, and his unsupported speculation is insufficient to satisfy the prejudice prong of Strickland.

For all of these reasons, it is clear that petitioner has not demonstrated that the state court's decision rejecting his ineffective assistance of counsel claims was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Accordingly, utilizing the AEDPA's doubly deferential standards of review applicable to such claims, this Court denies relief.

## **RECOMMENDATION**

It is therefore **RECOMMENDED** that the federal application for habeas corpus relief filed by Ortiz Jackson be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by

---

[61] Supp. St. Rec. Vol. 3 of 3, Trial Transcript, pp. 420-421, 11/19/10.

the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[62]

New Orleans, Louisiana, this  1st_ day of October, 2018.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

---

[62] <u>Douglass</u> referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.